Curia, per
Harper, J.
If the charter of the defendants was forfeited by the suspension of specie payments in 1837, and the forfeiture were incurred from the time of the act committed, we are of opinion that the Act of 1839, which is pleaded, must be regarded as a waiver of the forfeiture. If the process of quo warranto would be a proper one to try the question of forfeiture, it follows of necessity that the forfeiture is regarded in law as incurred from the time of the act committed. The very foundation of the proceeding is, that the defendants are guilty of usurpation, by exercising their corporate franchise after the act by which forfeiture is incurred.
In the case of the King vs. the city of London, so much referred to on both sides, and which is the earliest case we have upon the subject, to the quo warranto, the city pleaded its charter. To this the Attorney General replied the acts which were relied on as the causes of forfeiture, and concluded “ by which the Mayor, Commonalty and citizens, the privilege, liberty and franchise of being a body politic and corporate, did forfeit, and afterwards, by the time in the information, that liberty and franchise of being a corporation did usurp upon the Kingand according to this was the judgment of the Court. 8 Cobbett's State Trials, 1071. It was objected by Sir George Treby, the City Recorder, that if the defendants were charged with usurpation and not being a corporation, whether by forfeiture or otherwise, the information should not have been against the City by its corporate name, but against particular persons — the individuals composing the pretended corporation. Ibid, 1118. To which Sir Robert Sawyer replied, that úntil seizure they continued a corporation de facto. Id. 1154. Both seem to agree that, de jure, the forfeiture is incurred from the time of the act committed. Sir James Smith’s case is relied upon as tending to shew that the quo warranto is not the proper process, and that the *449 corporation continues till judgment. The question in that case, as reported in 4 Mod. 58, seems to be with respect to the validity of the judgment against the city ofLondon. Lord Holt is made to say — “A corporation may be dissolved, for ’tis created upon a trust; and if that be broken, ’tis forfeited; but a judgment of seizure cannot be proper in such case — for if it be dissolved, to what purpose should it be seized.”
‘‘Therefore, by this judgment in the quo warranto, the corporation was not dissolved; for it doth neither extinguish nor dissolve the body politic.”
“Whenever any judgment is given for the King, for a liberty which is usurped, 4is quoad extinguatur, and that the person who usurped such a privilege, ‘libertat, &c., nulla tenus intromittat, &c.,’ which is the judgment of ouster. But the quo warranto must be brought against particular persons.” But if the quo warranto must be brought against particular persons, it should seem to follow that by forfeiture, the corporation is dissolved both de facto and de jure. This would be a most dangerous doctrine, especially with regard to banks, whose contracts and transactions with third persons are so numerous. But in Skinner, 311, (where the judgment is more fully reported under the title of the King vs. The City of London,) nothing of this sort appears, and the judgment is made to turn on a totally different point. It is said, the decision must depend, not on the judgment which was actually entered, but on the recital of it in the Act of Parliament restoring the privileges of the city of London. The stature recites the judgment, “the which is, thai the liberty, franchise, and privilege of the city of London, being a body politic, may be seized” — instead of “the liberty, &c., of being a body politic.” The statute was held to be conclusive, that the body politic continued to exist; for a corporation may continue to exist, though deprived of its franchises.
The case of the King vs. Amery, 2 T. R. 515, was one in which there was a judgment on a quo warranto against the City of Chester, similar to that against the City of London — that “the liberties, <fec. should be seized” but “quosque” until the further order of the Court. Against the judgment it was argued that there could be no judg-. *450 ment of seizure under the quo warranto; if any, it should have been a judgment of ouster — that when corporations legally created, abuse any of the franchises to which they are entitled, or usurp others to which they have no claim, there the information is brought against the corporation as such, and there a judgment of seizure is given. But when a body of men assume to themselves to be a corporation, by any given name, and an information is brought against them, it must be by their individual names. To which it was replied that the corporate name is only a description of the persons sued; they continue a corporation, de facto, till judgment; and that only can decide whether they be such or not. The Court held that, the corporation not having appeared, the judgment against the city of Chester was final and conclusive, and the’ King having granted a new charter, the subsequent restoration of the old charter was null and void.
This j udgment was reversed in the House of Lords— not on the ground of any irregularity in the process of quo warranto or judgment of seizure ; but, as I learn from Kyd’s treatise on Corporations, (2 vol. 510 — the report of the case is said to.be published in two volumes, quarto — ) on the ground that the effect of the judgment quosque was only to suspend the use of the corporate franchises, so that the King might appoint a cusios, but not grant a new charter ; and by the charter of pardon and restitution of the old charter, the King’s hands were removed. The authority is fully in point as to the process and the judgment.
The judgment of the Court was delivered by Ash urst, Justice, and I cannot regard what is said by him in the later case, of the King vs. Parmon, 3 T. R. 244, as inconsistent with it, or intended to impugn it. In that case, where an integral part of the corporation was gone, which it had no power to restore, it was held ipso facto dissolved. The Judge says, “It was argued that admitting the old corporation to be in a state to be dissolved, that could not be effected without a scire facias to repeal the former grant, Or a judgment on a quo warranto. But I think those modes are only necessary to be pursued in the following cases. A scire facias is proper when there is a legal existing body capable of acting, but who have been guilty of an abuse of *451 the power entrusted to them, <fec. And a quo warranto is necessary when there is a-body corporate de facto, who take upon themselves to act as a body corporate, but who, from some defect in their constitution, cannot legally exercise the powers they affect to use,” I do not very well understand what may be meant by “some defect in their constitution,” but the whole is said incidentally[as matter of argument, to shew the absurdity of requiring such formal proceeding to dissolve a body which is already ex> tinct.
All the elementary authorities take it for granted, as the familiar law, that this is the proper process when there has been a forfeiture for abuse, as well as when there was an original usurpation. So it is said in 1 El. Com,. 485, that a charter may be forfeited by neglect or abuse, and “that the regular course is to bring an information in nature of a writ quo warranto, to inquire by what warrant the members noto exercise their corporate power, having forfeited it by such and such proceedings.” The same thing is laid down with equal explicitness by Kyd, 2 vol. 395, 403-4. So it-is said by Justice Story in Terrett vs. Taylor, 962, 51, “A private corporation, created by the Legislature, may lose its franchises by a misuser or nonuser of then, and they may be resumed by the Government under a judicial judgment upon. a quo toarranto.” The various American cases brought to our view, from New York, from Pennsylvania, from Alabama and Indiana, were proceedings -by quo toarranto, to enforce a forfeiture for abuse, and in none of them is it questioned to be the proper process. In short, I have found no case or authority, in which there is a doubt or suggestion to that effect, or that the continuing to exercise the corporate franchises after an act of forfeiture, is not an usurpation.
Then the-Bank, though forfeited, in contemplation of law, continued to exist, de facto, so as to render its transactions valid. And this is by no means a thing unknown to our law. Such is the familiar case of administration granted, when there is a will and executor; the acts of the admistrator are valid until his appointment be revoked. Such too is the case of public officers who have failed to take prescribed oaths. The Banks thus existing, the Act *452 of 1839 was passed, which provides “that the last instalment of fifty dollars on the increased capital stock of the Bank of Charleston may be paid at such time as the president and directors may call therefor, on notice of one month, published in two or more of the public gazettes in Charleston.” The original charter required those instal-ments to be paid at a specified time. Now it is not possible that any implication could be more absolutely necessary — if indeed it can be called implication — than that by virtue of the Act, the Bank shall be and continue a corporation, for the purpose of fixing the time for calling in the instalments, and giving the notice ; and of course for the purpose of exercising the other functions to which this is merely accessory, the power is granted indefinitely as to term. But when the Legislature, by law, declares that a corporation shall continue to exist, can it be doubted that this is a waiver of a previous forfeiture'? To say that a corporation existing by authority of law, is not a corporation de jure, would be an absurdity in terms. The case of The People vs. The Manhattan Co. 9 Wendall, 351, is an authority expressly in point, that a forfeiture may be waived by a subsequent act of the Legislature, recognizing the existence of the corporation.
I am inclined to think, too, that the adoption by the Legislature of the report of the Committee of Ways and Means, of the 20th Dec. 1837, was a waiver of this forfeiture. It appears from the report that the Governor had communicated to the Legislature the fact of the suspension of specie payments by the Banks of the State, with an exposition of the reasons for the step they had taken. This part of the message was referred to the Committee, who reported that they feel satisfied that the Banks are entitled to public confidence, which report was concurred in by both branches of the Legislature. The Comptoller General also communicated the same information to the Legislature. I think this must be interpreted into an approval of the conduct of the banks. I do not know any particular manner by which a party entitled to a forfeiture may waive it. Whatever is clearly significant of the intention, I suppose, will be sufficient. In Webster vs. Bannister, Doug. 394, the forfeiture of an annuity bond was *453 waived by parol and giving day to the obligor. I do not know that the Legislature must waive by law. It may by resolution direct its officer to proceed to enforce the forfeiture ; and by parity of reason, it may direct him to forbear and remit the penalty. And certainly, when the pardon or amnesty is once granted, it cannot be recalled. It has passed in rem actam. To hold the contrary, would work the utmost injustice to persons who may have become holders of stock on the, faith of the legislative amnesty.
After these proceedings of the Legislature, it is scarcely necessary to investigate the question of notice to it of the act of forfeiture. It is ordered that the demurrer be overruled, and the judgment affirmed.
D. Johnson and Dunkin, Chancellors, Richardson, Q’-Neall, Butler and Wardlaw, Justices, concurred. J. Johnston, Ch., and Earle, J., absent.